UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Derrick Holliday,                                    Civil No. 09-735 (JMR/FLN)

    Petitioner,

v.                                                   **REPORT AND RECOMMENDATION**

Warden, Jessica Symmes,

    Respondent.

_____

Jodie L. Carlson, Assistant State Public Defender, for Petitioner.
Donna J. Wolfson, Assistant County Attorney, for Respondent.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [#1]. Respondent filed an answer [#7] and responsive memorandum in opposition to the petition [#8]. Thereafter, Petitioner filed a reply memorandum [#10]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends that the petition be DENIED.

## I. BACKGROUND

Petitioner Derrick Holliday ("Petitioner") is currently incarcerated at the Minnesota Correctional Facility—Oak Park Heights in Stillwater, Minnesota. (Mem. in Supp. of Pet. for Writ of Habeas Corpus 3 [hereinafter "Mem. in Supp."].) He is serving a life sentence without the possibility of parole for the crime of first-degree murder, and a concurrent 180-month sentence for attempted first-degree murder. *Id.* at 3. After a bench trial, Petitioner was convicted of first-degree murder, second-degree murder, attempted first-degree murder, and attempted second-degree murder by the Honorable Toddrick S. Barnette of the Minnesota District Court for

1

the Fourth Judicial District, County of Hennepin. *Id.* at 2. The Minnesota Supreme Court affirmed his conviction on March 6, 2008. *State v. Holliday*, 745 N.W.2d 556 (Minn. 2008). Judgment was entered on April 17, 2008. (Mem. in Supp. 2.) Petitioner then filed a Petition for a Writ of Certiorari with the United States Supreme Court on May 28, 2008, which was subsequently denied on October 6, 2008. *Id.*

> The undersigned accepts the facts of this case as stated by the Minnesota Supreme Court:
>
> On the evening of March 31, 2006, [Petitioner] went to the Crown Theater, located in the Block E complex in downtown Minneapolis, with a loaded Smith and Wesson .44 magnum revolver. A dispute erupted inside the theater, and a police officer described the situation as "a riot" in which people were fighting, screaming, and throwing chairs. After the police ordered everyone out of the building, two groups "squared off" in the middle of Sixth Street. [Petitioner]'s group was facing Gluek's Restaurant and Bar, and the other group was facing Jimmy John's. Members of the two groups screamed and raised their shirts up at each other, but there was no physical contact between them. One of the members of the group facing Jimmy John's reached behind his back but was not seen with a weapon. [Petitioner] then pulled out his revolver and pointed it at the group facing Jimmy John's, causing the group members to flee. He then ran diagonally across Sixth Street toward First Avenue and fired multiple shots, holding the revolver directly in front of him with his arm outstretched. The district court found, based on witness testimony, that [Petitioner] "was aiming at a specific person as he chased that person" and "had 'a bead' on the person he was chasing."
>
> Meanwhile, unrelated to this activity, Alan Reitter was in downtown Minneapolis with a group of friends. At approximately 11:30 p.m., the Reitter group left the Refuge Bar, located on First Avenue between Fourth Street and Fifth Street, for the Lone Tree Bar, located on Sixth Street between Hennepin Avenue and First Avenue. Upon hearing gunshots as they walked down Sixth Street, some of Reitter's companions took cover near the pay booth of the parking lot bordering Sixth Street and others took cover behind the short brick barriers on the parking lot's perimeter. [Petitioner] fired toward the parking lot from in front of the pay booth, striking Reitter in the face. [Petitioner] ran by Reitter and proceeded on First Avenue toward Fifth Street.
>
> Reitter was found lying in a pool of blood near the exit arm of the parking lot pay booth. He died the next day, and the medical examiner who performed the autopsy testified that Reitter died from a gunshot wound to the head and that the manner of Reitter's death was homicide. The medical examiner concluded that Reitter's injuries were consistent with the use of a .44-caliber magnum handgun.
>
> Minneapolis police officer Jomar Villamor was positioned at the corner of First

Avenue and Fifth Street when he heard gunshots to the south and then saw [Petitioner] running up First Avenue and pointing a revolver at a person running in front of him. Villamor did not see [Petitioner] fire the revolver, but two other witnesses testified that they saw [Petitioner] shoot in the direction of the other person running up First Avenue. [Petitioner] turned up Fifth Street, and Villamor pursued him with his own gun drawn and yelled numerous times, "Police, drop the gun." Villamor testified that once during the chase [Petitioner] pointed the revolver directly at him. Villamor followed [Petitioner] into an alley connecting Fifth Street and Fourth Street. Villamor saw [Petitioner] throw the revolver toward a row of vehicles before [Petitioner] reached Fourth Street, and Villamor heard the sound of "metal-to-metal contact" and the security alarm of a red pickup. After leaving the alley, [Petitioner] ran down Fourth Street, turned up First Avenue, and attempted to enter "the Karma Bar." [Petitioner] was detained by bouncers at the bar entrance and then handcuffed by Villamor.

Another officer who had arrived at the scene took custody of [Petitioner] so that Villamor could retrieve the revolver. Villamor returned to the alley and found the revolver in the bed of the red pickup. Four discharged cartridge casings and two live cartridges were inventoried with the revolver. The predominant DNA profile on the revolver matched [Petitioner]'s DNA profile, and multiple witnesses testified that the revolver recovered by the police looked similar to the revolver wielded by the shooter.

The police interviewed [Petitioner] after taking him into custody, and a DVD recording of the interview and an accompanying transcript were admitted as evidence at trial. [Petitioner] told the police that he brought the revolver downtown because he did not want his girlfriend to find it and because he does not "really got too many pals, or people that hang." He claimed that he pulled out the revolver as people were "coming at" him and that another person pulled out a gun in response. [Petitioner] said that he shot into the air to scare people away and then ran, shooting at the ground. He maintained that he acted in self-defense and did not intend to shoot anyone.

On April 20, 2006, [Petitioner] was charged with first-degree premeditated murder under Minn.Stat. § 609.185(a)(1) (2006), second-degree intentional murder under Minn.Stat. § 609.19, subd. 1(1) (2006), attempted first-degree premeditated murder under Minn.Stat. §§ 609.185(a)(1) and 609.17 (2006), attempted second-degree intentional murder under Minn.Stat. §§ 609.19, subd. 1(1), and 609.17 (2006), and first-degree assault under Minn.Stat. § 609.221, subd. 2(a) (2006). [Petitioner] waived his right to a jury trial, and his bench trial commenced on September 28, 2006.

At trial, the State called A.A. as a witness to testify as to information he gave in an interview with Sergeant Charles Adams in April 2006 and in his meetings with Assistant Hennepin County Attorney Robert Streitz in May 2006 and September 2006. After viewing a report detailing his interview with Adams and a file memorandum from the May meeting, A.A. claimed he could not remember those discussions, and, after viewing a document from the September meeting, A.A.

said he remembered talking to someone in the county attorney's office but could not remember what the conversation was about. On cross-examination, A.A. agreed that his regular ecstasy use possibly affected his ability to remember.

Sergeant Adams then testified as to what A.A. said in the April 2006 interview, including A.A.'s claim that he was [Petitioner]'s intended victim when Reitter was shot. Jessica Immerman, a legal services specialist in the county attorney's office, was present at A.A.'s meeting with Streitz in September 2006. Immerman testified that Streitz read a report of the April interview to A.A. and that A.A. acknowledged that he had made the statements included in the report. Immerman then read into the record the report of the April interview. According to Immerman, Streitz also read to A.A. a memorandum Streitz had made of their May meeting and A.A. affirmed its contents. Immerman then read into the record the memorandum of the May meeting, which included A.A.'s allegation that [Petitioner] was chasing and shooting at him when Reitter was shot. Finally, Immerman read into the record a portion of a memorandum summarizing A.A.'s September meeting with Streitz, which documented A.A.'s affirmations of the April report and the May memorandum.

[Petitioner] objected to the testimony of Adams and Immerman and to the reading into the record of the three documents on the bases of the hearsay rules and the Confrontation Clause of the United States Constitution. The district court overruled [Petitioner]'s objections, concluding that (1) the Confrontation Clause of the United States Constitution did not bar the admission of A.A.'s prior statements because [Petitioner] had the opportunity to cross-examine him and (2) the testimony of Adams and Immerman and the contents of the three documents were admissible under the recorded recollection hearsay exception of Minn. R. Evid. 803(5) and the residual hearsay exception of Minn. R. Evid. 803(24) (2006) (recodified Sept. 1, 2006, with Minn. R. Evid. 804(b)(5) (2006) to form Minn. R. Evid. 807).

*State v. Holliday*, 745 N.W.2d 556, 559–62 (Minn. 2008).

The Minnesota Supreme Court affirmed Petitioner's conviction and determined that there had been no violation of Petitioner's rights under the Confrontation Clause. The Court held that "[t]he Confrontation Clause is satisfied by a declarant's appearance at trial for cross-examination, and it is for the factfinder to evaluate a declarant's credibility." *Id.* at 568. Because "A.A.'s memory infirmities were exposed at trial, and the district court determined that he was not a credible witness and gave his statements 'little if any weight,'" the Minnesota Supreme Court found that the admission of A.A.'s prior statements at trial did not violate the Confrontation Clause. *Id.*

In the instant action, Petitioner alleges that he has been deprived of his federal constitutional rights under the Sixth Amendment Confrontation Clause. Petitioner maintains that his right to confrontation was violated by the trial court's admission of A.A.'s prior statements. The Confrontation Clause issue was raised at trial, and again on appeal to the Minnesota Supreme Court. Thus, the record reflects that Petitioner has exhausted his state court remedies on this claim.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard that governs this Court's review of habeas corpus claims raised by state prisoners. The relevant portion of the AEDPA, 28 U.S.C. § 2254(d), provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court discussed the meaning of this statute, and how it should be applied by the federal district courts. The Court held that:

> [A] state-court decision can be "contrary to" this Court's clearly established precedent in two ways. First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours . . . .
>
> Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id*. at 405, 413. The Court further explained the "unreasonable application" clause:

> A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . . . [A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 409, 411.

A writ of habeas corpus may also be available where the state court's resolution of a case is based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). In other words, habeas relief may be granted if the state court's judgment is based on findings of fact that could not reasonably be derived from the evidentiary record. When reviewing a state court decision, however, a "federal court . . . presumes that the state court's factual determinations are correct," and that presumption "may be rebutted only by clear and convincing evidence." *Lee v. Gammon*, 222 F.3d 441, 442 (8th Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

Therefore, a federal district court is not permitted to conduct its own de novo review of a habeas petitioner's constitutional claims. Habeas relief cannot be granted unless the petitioner has identified, and substantiated, a specific error committed by the state courts. Moreover, he must show that the state courts committed the type of error that is actionable under § 2254(d), as that statute has been interpreted by the Supreme Court in *Williams*. Demonstrating actionable error requires that a petitioner, as a threshold matter, present a federal question in his petition for relief. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

### III. DISCUSSION

**The admission of A.A.'s prior statements at trial did not violate Petitioner's rights under the Confrontation Clause.**

Petitioner asserts that he is entitled to habeas relief on the basis that the admission of A.A.'s prior statements at trial violated his Confrontation Clause rights under the United States Constitution. Petitioner argues that because "the Minnesota Supreme Court's decision in *State v. Holliday*, 745 N.W.2d 556 (Minn. 2008), is 'contrary to' the Supreme Court's decision in *Douglas v. Alabama*, 380 U.S. 415 (1965), and an 'unreasonable application' of the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), and its pre-*Crawford* decisions," the Court should grant the petition for a writ of habeas corpus and vacate Petitioner's conviction and sentence. (Pet'r Reply to Resp't Answer and Mem. in Resp. to Pet. for Writ of Habeas Corpus 1 [hereinafter "Pet'r Reply Mem."]; Mem. in Supp. 14.)

    A.    **The Minnesota Supreme Court's decision in *State v. Holliday*, 745 N.W.2d 556 (Minn. 2008), is not an "unreasonable application" of the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), and its pre-*Crawford* decisions.**

The Confrontation Clause of the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. *Crawford v. Washington* held that the Confrontation Clause prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 36, 53–54.

According to Petitioner, A.A.'s memory loss precluded the opportunity to cross-examine him, and thus rendered the admission of A.A.'s prior statements a violation of the Confrontation Clause. The United States Supreme Court, however, has determined that failure of cross-examination is "not produced by [a] witness' assertion of memory loss." *See United States v.*

*Owens*, 484 U.S. 554, 561–64 (1988). *United States v. Owens* held that the validity of cross-examination at trial is not undermined when a declarant, while testifying at trial, asserts no memory of the events reported in an earlier statement. *See id.* at 561–64 (approving admission of prior statement by victim who named defendant as assailant even though, at trial, victim could not remember seeing assailant).

A.A. appeared at trial to testify, though his alleged memory loss prevented him from testifying about the substance of his prior statements. Because A.A. asserted a loss of memory, however, the Minnesota Supreme Court reasonably applied *Crawford* and pre-*Crawford* decisions, including *Owens*, in its determination that Petitioner's cross-examination was not undermined on the basis of A.A.'s memory loss, and thus did not present a Confrontation Clause problem. The fact that A.A. "was unable to remember salient facts does not render [him] an unavailable witness for purposes of a Confrontation Clause inquiry." *Yanez v. Minnesota*, 562 F.3d 958, 962 (8th Cir. 2009) (quotation omitted). "A witness' inability to recall either the underlying events that are the subject of an extra-judicial statement or previous testimony or recollect the circumstances under which the out-of-court statement was given, does not have Sixth Amendment consequence." *Id.* at 964, citing *Owens*, 484 U.S. at 558 (holding that the Sixth Amendment "includes no guarantee that every witness . . . will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion" and that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the fact finder the reasons for giving scant weight to the witness' testimony").

Thus, the Minnesota Supreme Court's decision in the instant case was not an objectively "unreasonable application" of *Crawford v. Washington*, 541 U.S. 36 (2004), and the United States Supreme Court's pre-*Crawford* decisions.

### B. The Minnesota Supreme Court's decision in *State v. Holliday*, 745 N.W.2d 556 (Minn. 2008), is not "contrary to" the Supreme Court's decision in *Douglas v. Alabama*, 380 U.S. 415 (1965).

Petitioner further argues that *Douglas v. Alabama*, 380 U.S. 415 (1965), stands for the proposition that a witness' mere presence in court is not enough to satisfy a defendant's right of cross-examination under the Confrontation Clause. (Pet'r Reply Mem. 2.) This argument overstates Supreme Court precedent on this point. *Douglas v. Alabama* held only that, under the limited circumstances of that case, a witness' assertion of privilege and refusal to testify prevented the defendant from having the opportunity to cross-examine him, and thus violated the Confrontation Clause. *See Douglas*, 380 U.S. at 420.

In *Douglas*, the witness at issue had been previously convicted of assault with intent to murder, arising from the same events for which the defendant stood trial. *Id.* at 416. The prosecution called the witness to testify about his signed confession in which he implicated the defendant. *Id.* at 416. When questioned, however, the witness refused to answer any inquiries concerning the alleged crime. *Id.* The prosecutor proceeded to read the confession aloud, asking after every few sentences if the witness had made each statement, to which the witness responded by asserting the privilege and refusing to answer. *Id.* The witness' alleged statement that the defendant had "fired the shotgun constituted the only direct evidence that he had done so," and that, paired with the witness' description of the circumstances surrounding the shooting, "formed a crucial link in the proof both of [the defendant's] act and of the requisite intent to murder." *Id.* at 419. The Supreme Court determined that because "[t]he alleged statements clearly bore on a fundamental part of the State's case" against the defendant, the circumstances were such that "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Id.* at 420 (quotation omitted).

Petitioner asserts that the facts of his case "are materially indistinguishable" from those of *Douglas v. Alabama*. Such is not the case. Unlike the witness in *Douglas*, A.A.'s testimony was not a critical element of the prosecution's case in chief, and the admission of A.A.'s prior statements did not unfairly prejudice Petitioner. The State provided testimony from multiple eyewitnesses to the shooting as well as DNA evidence from the revolver, which implicated Petitioner. *See State v. Holliday*, 745 N.W.2d 556, 560 (2008). Moreover, after the bench trial, the trial judge noted in his findings that he "found [A.A.] lacking in credibility and gave little weight to his statements." (Resp't App. C-9.) Thus, the trial court did not rely much upon the testimony of A.A. in rendering its verdict, if at all.

Additionally, Petitioner argues that the key issue at hand relates to the fact that A.A. "was present at trial but unable to testify about the event and unable to affirm or deny the truth of his prior statements about that event." (Mem. in Supp. 21); *see Douglas*, 380 U.S. at 420 ("[E]ffective confrontation of [witness] was possible only if [witness] affirmed the statement as his.") Although A.A. testified at trial, he did not testify about the shooting, and could not remember giving a statement to Sergeant Adams.[1] *Holliday*, 745 N.W.2d at 561. Still, such an inability to affirm did not render A.A. "unavailable" for cross-examination for *Crawford* purposes where his inability to affirm the prior statements was based on alleged memory loss as opposed to an invocation of privilege.

The holding of *Douglas v. Alabama* was limited to the facts of that case where the truth of an accomplice's alleged confession was a central component in obtaining a conviction. *See e.g. Lilly v. Virginia*, 527 U.S. 116, 131–32 (1999) (stating that the *Douglas* holding "was premised on the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is

---

[1] A.A. did, however, remember "talking to someone in the county attorney's office but could not remember what the conversation was about." *State v. Holliday*, 745 N.W.2d 556, 561 (Minn. 2008).

presumptively suspect and must be subjected to the scrutiny of cross-examination") (citation omitted); *see also Crawford v. Washington*, 541 U.S. 36, 57 (2004) ("We similarly excluded accomplice confessions where the defendant had no opportunity to cross-examine."). The *Douglas* court neither addressed the Confrontation Clause requirements for circumstances under which a witness suffers from a faulty memory nor did it discuss the implications of such a witness' testimony where it has little to no bearing on a finding of guilt or innocence.

This Court finds *Douglas v. Alabama* distinguishable from the instant case. The confrontation issue in Petitioner's trial arose from A.A.'s failure of memory and not the invocation of his 5th Amendment privilege against self-incrimination. Moreover, A.A.'s testimony was not fundamental to the determination of Petitioner's guilt or innocence. Thus, the line of reasoning articulated in *Douglas v. Alabama* is not controlling here.

Moreover, the question of whether the Minnesota Supreme Court's decision in *Holliday*, 745 N.W.2d 556, is contrary to law as expressed by the United States Supreme Court requires more than just a comparison between two opinions. It requires an examination of the Supreme Court's analysis of the Confrontation Clause. The Court's opinion in *Douglas v. Alabama,* 380 U.S. 415, is not the Supreme Court's last word on the Confrontation Clause. Indeed, the Court's more recent decision in *Crawford v. Washington,* 541 U.S. 36, significantly changed how the Court analyzes the Confrontation Clause. Not only does *Crawford* provide a more recent Supreme Court analysis of the Confrontation Clause than that articulated in *Douglas*, but it is the case on which the Minnesota Supreme Court primarily relied in its *Holliday* decision. The Minnesota Supreme Court's determination that "[t]he Confrontation Clause is satisfied by a declarant's appearance at trial for cross-examination," 745 N.W.2d at 568, is consistent with the United States Supreme Court's observation in *Crawford* that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his

prior testimonial statements," 541 U.S. at 59 n. 9. Thus, the Minnesota Supreme Court in *State v. Holliday* did not arrive "at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The trial court's decision to allow A.A.'s prior statements to be read into the record through witness testimony was not "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief pursuant to 28 U.S.C. § 2254(d).

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for a Writ of Habeas Corpus [#1] be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE.**

It is further recommended, pursuant to 28 U.S.C. § 2253(c), that a Certificate of Appealability not be issued because Petitioner has failed to make a substantial showing of the denial of any constitutional right.


DATED: November 9, 2009          *s/ Franklin L. Noel*
                                 FRANKLIN L. NOEL
                                 United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 25, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.